**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810        Facsimile:  602-606-2811

John "Jack" D. Wilenchik, #029353
admin@wb-law.com
*Attorneys for Defendant Brett R. Jefferson*

David A. Weisz, Esq. (Fla. Bar No: 1023229)
Ryan J. Andrews, Esq. (Fla. Bar No: 0104703)
Steven R. Andrews, Esq. (Fla. Bar No: 0263680)
**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 | F: (850) 681-6984
david@andrewslaw.com
ryan@andrewlaw.com
steve@andrewslaw.com
*Pro Hac Vice Attorneys for*
*Defendant Brett R. Jefferson*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick B. Horsman, an individual, | Case No. 2:21-cv-00841-SRB |
| Plaintiff, | |
| vs. | **DEFENDANT BRETT R.** |
| Brett R. Jefferson, an individual, and Ian Lev, an individual, | **JEFFERSON'S MOTION TO DISMISS** |
| Defendants. | |

Defendant, Brett R. Jefferson, specially appearing through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), files this Motion to Dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, respectfully showing that the Complaint must be dismissed in-full as to Jefferson for the reasons that follow.

## I.    INTRODUCTION

This vexatious, bad faith action was filed by Plaintiff, Patrick B. Horsman, as an unfortunate act of desperation, frustration, and spite, after Horsman and his business associates and affiliates: (i) wrongfully induced and misappropriated millions of dollars of investments and loans from investors nationwide into Integrated CBD; (ii) stubbornly refused to make investors whole, despite their reasonable demands for repayment of funds to which they were lawfully entitled; and (iii) then, unsurprisingly, were sued by certain such investors in an action in Arizona.

Notably, Jefferson did ***not*** personally invest in or loan money to Integrated CBD, and Horsman does not allege as much. Moreover, as made abundantly clear from the Complaint itself, Jefferson has no contacts, ties, or relations (much less meaningful ones) to Arizona, and engaged in no conduct or activity (much less purposefully so) in or directed at, or even related to, Arizona or a resident thereof, so as to create any substantial connection between Jefferson and Arizona. Jefferson thus cannot reasonably be expected to be haled into Arizona's courts, and well-settled law requires that the Complaint be dismissed as to Jefferson for lack of personal jurisdiction.

Furthermore, the Complaint unmistakably fails to sufficiently plead any cause of action against Jefferson. Rather, this case is a futile attempt to fit a square peg into a round hole through the vehicle of a Civil RICO claim—despite admonishments against doing so by Arizona's legislature and courts[1]—numerous elements of which Horsman makes no attempt to (as he cannot) plead, among a grab bag of various other frivolous claims that are flatly foreclosed by privilege/immunity under Arizona law, as well as insufficiently pled. Accordingly, the Complaint must also be dismissed as to Jefferson for failure to state a claim upon which relief can be granted.

---

[1] *See*, *e.g.*, A.R.S. § 13-2314.04(N)-(Q); *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. 12-cv-8261, 2014 U.S. Dist. LEXIS 133560, at *23 (D. Ariz. Sep. 23, 2014) (dismissing Arizona RICO claim and awarding sanctions, noting "had [plaintiff's counsel] performed even a cursory examination of Arizona law, [plaintiff's counsel] would have realized that [defendant's] 'threat' was not extortion, but rather an aggressive statement of intent to comply with Arizona law"); *Camboni v. Brnovich*, No. 1 CA-CV 18-0621, 2020 Ariz. App. Unpub. LEXIS 269, at *11 (Ariz. Ct. App. Mar. 10, 2020) (affirming dismissal of Arizona RICO claim and award of fees and costs under A.R.S. §§ 12-349 and 13-2314.04, noting "the superior court properly concluded that [plaintiff] brought the claims in bad faith and for an improper or oppressive purpose").

## II.    THE COMPLAINT MUST BE DISMISSED AS TO JEFFERSON FOR LACK OF PERSONAL JURISDICTION

### A.    Legal Standard Under Rule 12(b)(2)

"A federal court sitting in diversity applies the personal jurisdiction rules of the forum state and the Due Process Clause of the Fifth Amendment." *Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1070 (D. Ariz. 2010) (citing *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)). "The Arizona and federal rules are identical, as Arizona's long arm statute 'provides for personal jurisdiction co-extensive with the limits of federal due process.'" *Id.* (quoting *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 736 P.2d 2, 4 (Ariz. 1987)), and citing Ariz. R. Civ. P. 4.2(a)).

Jurisdiction is constitutionally permissible only if the defendant's business contacts within the state are substantial or continuous and systematic; absent such contacts, ties, or relations with the forum, the state cannot exercise jurisdiction. *See Armstrong v. Aramco Servs. Co.*, 155 Ariz. 345, 350, 746 P.2d 917, 922 (Ariz. Ct. App. 1987). There are two types of personal jurisdiction: general and specific. General jurisdiction is an individual's domicile or, for a corporation, an equivalent place where the corporation is regarded as at home. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). Due process protects individuals from being subject to a binding judgment of a forum with which they have established no meaningful contacts, ties, or relations by requiring they have fair warning that a particular activity may subject them to a foreign court's jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

Where, as here, there is no general jurisdiction, specific jurisdiction exists only if: (1) the defendant purposefully avails himself of the privilege of conducting business in the forum; (2) the claim arises out of or relates to the defendant's contacts or activities with the forum; and (3) the exercise of jurisdiction is reasonable. *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, 13 P.3d 280, 282 (Ariz. 2000). Specific jurisdiction does not arise from a plaintiff's or third party's unilateral activity, or a foreign defendant's foreseeability that a claim may arise. *See id.*; *Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271, 736 P.2d 2, 5 (Ariz. 1987). If a defendant purposefully directs activities at forum residents and litigation results from injuries arising out of or related to

such activities, the fair warning requirement is met. *See Armstrong*, 155 Ariz. at 349, 746 P.2d at 921. If there is no suit-related activity creating a substantial connection between the defendant and the forum, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state. *See Bristol Myers*, 137 S. Ct. at 1781. There must be a direct nexus between a foreign defendant's Arizona-related activities and the claims. *See Leon v. Peterbilt Motors Co.*, No. 18-cv-2122, 2019 U.S. Dist. LEXIS 28216, at *10 (D. Ariz. Feb. 21, 2019). "The minimum contacts inquiry focuses on the relationship between the defendant, the forum, and the litigation; the specific conduct being litigated must establish the necessary minimum contacts between the defendant and the state." *Armstrong*, 155 Ariz. at 349, 746 P.2d at 921.

   Plaintiff has the burden of making a *prima facie* showing of personal jurisdiction; and when a defendant challenges personal jurisdiction, the plaintiff cannot rest on bare allegations in the complaint but must present facts, by affidavit or otherwise, to support personal jurisdiction. *See In re Consol. Zicam Prod. Liab. Cases v. Zensano, Inc.*, 212 Ariz. 85, 90, 127 P.3d 903, 908 (Ariz. Ct. App. 2006) ("*Zicam*"); *Armstrong*, 155 Ariz. at 348, 746 P.2d at 920. If plaintiff makes a *prima facie* showing of jurisdiction, by establishing that minimum contacts occurred with the forum state and events causing alleged injury arose out of such contacts, defendant has the burden of rebuttal to show that the exercise of jurisdiction would be unreasonable. *See Zicam*, 212 Ariz. at 90, 127 P.3d at 908 (citing *MacPherson v. Taglione*, 158 Ariz. 309, 12, 762 P.2d 596, 599 (Ariz. Ct. App. 1988)). Casual or accidental contacts cannot sustain exercise of specific jurisdiction; rather, contacts must arise from a defendant's purposeful forum-related conduct. *See Plan. Grp. of Scottsdale, L.L.C. v. Lake Mathews Min. Props., Ltd.*, 226 Ariz. 262, 266, 246 P.3d 343, 347 (Ariz. 2011) ("*Planning Grp.*"). The court may consider affidavits in ruling on a motion to dismiss for lack of personal jurisdiction, *Maloof v. Raper Sales, Inc.*, 113 Ariz. 485, 487, 557 P.2d 522, 524 (Ariz. 1976), and "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

**B.** **Personal Jurisdiction is Lacking as to Jefferson**

Here, Horsman has not alleged any facts demonstrating or suggesting, and cannot in good faith contend, that Jefferson is subject to general jurisdiction in Arizona, where he is manifestly not domiciled or at home. *See* ECF No. 1-3 at 10, ¶24 ("Defendant Brett Jefferson is a resident of Fairfield County, Connecticut"); **Exhibit A** (Decl. of Brett R. Jefferson), at ¶¶1-13. In addition, it is abundantly clear that specific jurisdiction cannot be exercised over Jefferson in this Action. In his Complaint, Horsman alleges five purported bases for personal jurisdiction over Jefferson, *see* ECF No. 1-3 at 12, ¶30, none of which, individually or collectively, establish grounds for proper exercise of personal jurisdiction over Jefferson in this Action, for a multitude of reasons.

*First*, these allegations reflect settlement-related communications, and thus do not (and cannot) serve as a basis for personal jurisdiction under Arizona law.

> [T]he Court is wary of any reliance on the April 9, 2020 communication to establish jurisdiction because it appears to memorialize an effort by [defendant] to settle the parties dispute amicably out of Court. It is well established that parties are allowed to engage in the preliminary steps of litigation without waiving their ability to assert the defense of personal jurisdiction. Further, the Court hesitates to adopt a ruling that would require parties to forgo any settlement efforts out of the fear of sacrificing their procedural defenses. Fed. R. Civ. P. 1.

*Henrietta Mine LLC v. A.M. King Indus.*, No. 20-cv-1106, 2021 U.S. Dist. LEXIS 76830, at *10-11 (D. Ariz. Apr. 21, 2021).

*Second*, Horsman concedes, as he must, that "***BRJ Holdings III, LLC, loaned*** $2.5 million to Integrated CBD in the form of a convertible note."[2] ECF No. 1-3 at 10, ¶24; *id.* at 11, ¶27; *id.* at 12, ¶30; *id.* at 21, ¶55. BRJ Holdings III, LLC is not a party to this action. Since Jefferson did not personally invest in or loan money to Integrated CBD, *see* **Ex. A** at ¶15, Horsman does not and cannot allege as much. This is fatal, as specific jurisdiction "does not arise from the plaintiff's or a third party's unilateral activity," such as activity of Horsman, or third parties like Horsman's associates and affiliates, or BRJ Holdings III, LLC. *See Williams*, 199 Ariz. at 3, 13 P.3d at 282 (specific jurisdiction "does not arise from the plaintiff's or a third party's unilateral activity");

---

[2]  All emphasis herein is added, and citations altered or omitted, unless otherwise noted.

1  *Planning Grp.*, 226 Ariz. at 266, 246 P.3d at 347; *Batton*, 153 Ariz. at 271, 736 P.2d at 5.

2      *Third*, Jefferson was unaware of Horsman's location at the time of any of the parties'

3  interactions underlying Horsman's Complaint; thus, Jefferson necessarily could not have directed

4  his conduct towards Arizona or an Arizona resident (not to mention, Horsman very well may not

5  have even been in Arizona at the time of any such interactions—after all, by his own admission,

6  Horsman is a resident of Puerto Rico). *See* **Ex. A**, at ¶14; ECF No. 1-3 at 9, ¶22. Indeed, Jefferson

7  believed Horsman to be a resident of and located in Florida and/or Puerto Rico at all relevant

8  times, based on Horsman's own representations to Jefferson. *See* **Ex. A**, at ¶14. Indeed, there is

9  and can be no personal jurisdiction based on statements that contain no reference to the forum

10  state, and/or where the defendant is unaware that the plaintiff is a resident of the forum state (and

11  thus, also where plaintiff is, in fact, not a resident of the forum state). *See*, *e.g.*, *Xcentric Ventures*,

12  *LLC v. Bird*, 683 F. Supp. 2d 1068, 1075 (D. Ariz. 2010) (dismissing complaint based on lack of

13  personal jurisdiction where defendants were unaware whether plaintiffs were Arizona residents,

14  and plaintiffs otherwise did not allege facts to support a connection between the State of Arizona

15  and the allegedly defamatory statements) (citing *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002)

16  (holding there was no personal jurisdiction based on an allegedly defamatory article that contained

17  no reference to forum state, and noting that the defendant was unaware of plaintiff's residence)).

18      *Fourth*, even if Jefferson had himself invested in Integrated CBD—which he did not, *see*

19  **Ex. A** at ¶15—investing in a company, alone, does not subject an investor to jurisdiction where

20  such company is headquartered. *See Planning Grp.*, 226 Ariz. at 271, 246 P.3d at 352; *Patel v.*

21  *Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007) ("[T]he plaintiffs' jurisdictional allegations

22  consist of several isolated acts by the defendant that took place in connection with the parties'

23  agreement regarding the recovery of their investments . . . . The Court finds that these allegations

24  fail to establish a *prima facie* case that the defendant was 'doing business' in New York.").

25      *Fifth*, according to official public records maintained by the Arizona Corporation

26  Commission, Integrated CBD is a foreign corporation incorporated in Delaware, and which lists

27  its "Entity Principal Office Address" as 1000 N West Street, Suite 1501, Wilmington, New Castle

28

County, Delaware, 19801, USA—*i.e.*, ***not*** Arizona.[3] In addition, according to those same official public records, only on March 5, 2021 (*i.e.*, ***after*** all acts that purportedly form the basis of Horsman's claims, and just before filing this suit) did Integrated CBD file a Statement of Change with the Arizona Corporation Commission to list its principal address in Arizona (*i.e.*, rather than Delaware). However, under Arizona law, the personal jurisdiction analysis accounts for ***only*** those facts and events which occurred ***as of the time the cause of action accrued***, and does not consider events occurring thereafter. *See Henrietta Mine LLC*, 2021 U.S. Dist. LEXIS 76830, at *7-8.

*Sixth*, to the extent sending a complaint to a media outlet could support any of Horsman's alleged causes of action, sending a complaint to the Miami Herald (which is, of course, in Florida) is obviously not directing conduct towards Arizona. *See generally Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982) (affirming dismissal and denial of discovery as to personal jurisdiction in defamation suit against investor, where there was no proof that defendant's allegedly tortious statements were published in a newspaper in the state where personal jurisdiction was sought).

*Seventh*, as to all of Horsman's personal jurisdiction allegations, conclusory statements that conduct was directed towards Arizona cannot establish personal jurisdiction. *See*, *e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, MDL No. 15-2641, 2016 U.S. Dist. LEXIS 149786, at *324 (D. Ariz. Oct. 27, 2016) ("conclusory allegations are not sufficient to establish personal jurisdiction"); *Skydive Ariz., Inc. v. Quattrochi*, No. 05-cv-2656, 2006 U.S. Dist. LEXIS 63299, at *16 (D. Ariz. Aug. 22, 2006); *Curran v. Jerome Hotel*, No. 93-56522, 1994 U.S. App. LEXIS 14265, at *5 (9th Cir. Jun. 9, 1994) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)).

For each and all of the foregoing reasons, Horsman cannot establish a *prima facie* case—either that Jefferson personally availed himself of the privilege of conducting business in Arizona, or that Horsman's claims arise out of or relate to any of Jefferson's purported contacts or activities

---

[3]  A motion to dismiss is not converted to a motion for summary judgment when the court looks beyond the pleadings to matters of public record. *See*, *e.g.*, *In re Am. Cont'l Corp.*, 845 F. Supp. 1377, 1381 (D. Ariz. 1993) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988), and *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

with the forum—and even if he could, exercise of jurisdiction would be patently unreasonable.[4] Accordingly, the Complaint must be dismissed as to Jefferson for lack of personal jurisdiction.[5]

## III. THE COMPLAINT MUST BE DISMISSED AS TO JEFFERSON FOR FAILURE TO STATE A CLAIM

### A. Legal Standard Under Rule 12(b)(6)

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must allege facts sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* While "a complaint need not contain detailed factual allegations .

---

[4]  The seven factors considered in determining whether the court's exercise of jurisdiction would be reasonable are: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. . . . None of the factors is dispositive in itself; instead, we must balance all seven." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)). None of these factors weigh in favor of exercising jurisdiction over Jefferson. As explained, Jefferson has not purposefully injected himself into Arizona's affairs. In addition, the burden on Jefferson to defend in the forum (where he does not live, virtually has never been to, and does not do business) is high; Arizona has no conceivable interest in this litigation; the most efficient resolution of the controversy is elsewhere (particularly given that Horsman has not alleged he suffered any harm in Arizona, and so any purported witnesses or evidence would likely be elsewhere); there can be no interest in convenient and effective relief to Horsman in a forum where he neither resides nor alleges he suffered harm; and Horsman offers no indication that maintaining this action in Connecticut, where he alleges Jefferson resides, is precluded by any substantive or procedural impediments (Plaintiff bears the burden of proving an alternative forum is unavailable, *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1200 (9th Cir. 1988)). When these factors are balanced, Arizona's exercise of jurisdiction would clearly be unreasonable.

[5]  To the extent Horsman's suit is dismissed as to Jefferson for lack of personal jurisdiction, Jefferson should still be awarded attorneys' fees, court costs, and costs of investigation pursuant to A.R.S. § 13-2314.04(N)-(Q), for asserting a civil RICO claim over which the Court lacks jurisdiction. *See, e.g.*, *Mt. West Res., Inc. v. Living Trust of Fitzgerald*, Case No. C20120206, 2012 Ariz. Super. LEXIS 374, *2-6, *19-20 (Super. Ct. of Pima Cnty. Jul. 16, 2012).

. . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), but the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). In addition, failure to plead a necessary element of a claim requires dismissal thereof. *See Hassell v. Curley*, No. 00-cv-0839, 2000 U.S. Dist. LEXIS 22708, at *15-18 (D. Ariz. Dec. 11, 2000) (dismissing RICO claim for failure to plead necessary elements).

The issue of whether a privilege/immunity exists, which forecloses a cause of action and warrants dismissal, is decided as a matter of law on a motion under Rule 12(b)(6). *See, e.g.*, *Franzi v. Koedyker*, 157 Ariz. 401, 404-05, 758 P.2d 1303, 1306-07 (Ariz. Ct. App. 1985) (citing *Green Acres Tr. v. London*, 141 Ariz. 609, 688 P.2d 617 (Ariz. 1984)); *World Res. Co. v. Roosevelt Irrigation Dist.*, No. 1 CA-CV 10-0868, 2012 Ariz. App. Unpub. LEXIS 1191 (Ariz. Ct. App.

Oct. 11, 2012); *Sobol v. Marsh*, 212 Ariz. 301, 130 P.3d 1000 (Ariz. Ct. App. 2006); *Recorp Partners v. Gust Rosenfeld*, 198 Ariz. 230, 8 P.3d 418 (Ariz. Ct. App. 2000); *Sierra Madre Dev. v. Via Entrada Townhouses Ass'n*, 20 Ariz. App. 550, 514 P.2d 503 (Ariz. 1973).

### B.    The Civil RICO Claim Against Jefferson Must Be Dismissed

"In 1993, the Arizona legislature amended Arizona's Racketeer Influenced and Corrupt Organizations Act ("State RICO") statute and '[made] it even more analogous to its federal counterpart.'" *Castro v. Exec. Tr. Servs., LLC*, No. 08-cv-2156, 2009 U.S. Dist. LEXIS 14134, at *26 (D. Ariz. Feb. 23, 2009) (quoting *Rosier v. First Fin. Capital Corp.*, 181 Ariz. 218, 221 n.5, 889 P.2d 11, 14 (Ariz. Ct. App. 1994), and citing A.R.S. § 13-2314.04). "With this amendment, the legislature added the requirement that a plaintiff show a 'pattern of racketeering activity,' which it defined as '[a]t least two acts of racketeering' that are 'related' and 'continuous' - requirements established by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) ("It is this factor of continuity plus relationship which combines to produce a pattern.")." *Id.* at *27 (citing *Lifeflite, Inc.*, 198 Ariz. at 152, 7 P.3d at 161); A.R.S. § 13-2314.04. In turn, the elements of an Arizona civil RICO claim, like its federal counterpart, are summarized as follows: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Id.* Here, Horsman has not sufficiently pled the necessary elements of a RICO claim against Jefferson, and that claim must be dismissed. *See*, *e.g.*, *Hassell*, 2000 U.S. Dist. LEXIS 22708, at *15-18.

*First*, Horsman does not even attempt to plead the existence of an "enterprise"—the second necessary element of his RICO claim—much less sufficiently so. Arizona's RICO law defines "enterprise" as "any corporation, partnership, association, labor union or other legal entity or any group of persons associated in fact although not a legal entity." A.R.S. § 13-2301(D)(2). Here, the only mention or discussion of any ostensible "enterprise" is Horsman's conclusory allegation that "Plaintiff has been injured by Jefferson's acts of extortion, which were committed for financial gain during Jefferson's racketeering enterprise." ECF No. 1-3 at 40, ¶119. Such a barebones allegation is flatly deficient. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 663. And, the

Complaint is otherwise devoid of any reference to, or attempt to plead, the existence of any purported "enterprise." This alone is fatal to Horsman's RICO claim.

*Second*, assuming, *arguendo*, that Horsman has pled an enterprise (he has not), he fails to sufficiently allege that any such enterprise engaged in a predicate act of "racketeering activity"— another necessary element of his RICO claim. Even accepting as true the Complaint's allegations as to Jefferson's communications and actions vis-à-vis Horsman, Jefferson's conduct could not constitute extortion as a matter of law. Indeed, the extortion statute relied on by Horsman, and caselaw concerning extortion, make clear that a person seeking to reobtain property to which he has a lawful claim of right cannot have committed extortion. *See* A.R.S. § 13-1804(B); *State v. Weinstein*, 182 Ariz. 564, 565-68, 898 P.2d 513, 514-17 (Ariz. Ct. App. 1995); *Webb v. United States*, Nos. 1:07-cv-0254, 2008 U.S. Dist. LEXIS 8862, at *8 (E.D. Tenn. Feb. 6, 2008) (extortion "requires the conspirators to extort property from another with his consent and ***such a requirement necessarily excludes the conspirators own property* . . . "**) (citing *United States v. Brock*, 501 F.3d 762, 768 (6th Cir. 2007)); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130-32 (9th Cir. 2014) ("[W]here the defendant has a claim of right to property and exerts economic pressure to obtain that property, that conduct is not extortion . . . .") (quoting *Rennell v. Rowe*, 635 F.3d 1008, 1011, 1012 (7th Cir. 2011)); *Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-cv-0859, 2007 U.S. Dist. LEXIS 70655, at *24-25 (N.D. Okla. Sep. 24, 2007) ("there is no civil liability for exercising or threatening to exercise a legal right") (citing *Paul Hardeman, Inc. v. Bradley*, 486 P.2d 731, 733 (Okla. 1971) ("a threat to exercise a legal right cannot be the basis of an action"), and *Peoples Finance & Thrift Co. v. Hawell*, 82 P.2d 994, 995 (Okla. 1938) (a creditor's threat to institute legal action to recover mortgaged property cannot be the basis for civil liability if the creditor had a lawful right to the property)); *Rutland v. Mullen*, 2002 ME 98, ¶16, 798 A.2d 1104, 1111 ("a person who claims to have, or threatens to lawfully protect, a property right that the person believes exists cannot be said to have intended to deceive or to have unlawfully coerced or extorted another simply because that right is later proven invalid") (citing Restatement (Second) of Torts § 773 (1979)); *see also R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. 12-cv-8261,

2014 U.S. Dist. LEXIS 133560, at *19-25 (D. Ariz. Sep. 23, 2014) (discussing frivolity of dismissed RICO claim which was predicated on purportedly extortionate communications constituting settlement efforts and mere "aggressive 'bull-dog' language'"); *United Studios of Self Def., Inc. v. Rinehart*, No. 18-cv-1048, 2019 U.S. Dist. LEXIS 167370, at *17 (C.D. Cal. Sep. 13, 2019) ("In all, while [defendant] may have been too aggressive in communicating his desires to 'ruin' [plaintiff], his actions do not rise to the level of attempted extortion."); *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, No. 03-cv-10027, 2004 U.S. Dist. LEXIS 9480, at *4 (S.D.N.Y. May 27, 2004) ("'rhetorical hyperbole' or a 'vigorous epithet' is not actionable"). By Horsman's own allegations, Jefferson's actions were nothing but a non-violent attempt to recoup the investment of BRJ Holdings III, LLC, of which Horsman alleges Jefferson is a member, and a good faith belief that he was fulfilling a "fiduciary responsibility" to BRJ Holdings III, LLC, other investors, regulators, and society at-large, to expose fraud he believed was committed by Horsman—*see* ECF No. 1-3 at 10, ¶24; *id.* at 27, ¶72; *id.* at 40, ¶113—none of which does or can constitute extortion. Criminalizing such conduct would run flagrantly afoul of the same constitutional principles of protected speech addressed in *Weinstein*, 182 Ariz. at 566-67, 898 P.2d at 515-16. *See also Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 265 (1994) (Souter, J., concurring) ("I think it prudent to notice that RICO actions could deter protected advocacy and to caution courts applying RICO to bear in mind the First Amendment interests that could be at stake."). Thus, because Jefferson had a lawful claim to recoup the loan to Integrated CBD, and his attempts to do so are the precise acts Horsman claims to be extortionate, Jefferson's conduct cannot constitute extortion as a matter of law. This, too, is fatal to Horsman's RICO claim.

*Third*, assuming, *arguendo*, Horsman has pled an enterprise **and** racketeering activity (he has not), he plainly fails to sufficiently allege that any such racketeering committed by an enterprise was a "pattern"—yet another necessary element of the RICO claim. Arizona's RICO law defines "pattern" as "[a]t least two acts of racketeering" that are "related" and "continuous." A.R.S. § 13-2314.02(T)(3)(a). In further defining "continuous," Arizona courts have explained that "because of the legislature's obvious reliance on federal interpretation in fashioning these

12

amendments, it is reasonable to conclude that ***the legislature also intended to follow the Supreme Court's definition of 'continuous' to require that the related predicate acts extend 'over a substantial period of time,' i.e., over more than 'a few weeks or months.'*** *Lifeflite*, 198 Ariz. at 152-53, 7 P.3d at 161-62 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). Here, Horsman neither identifies two or more acts of purported racketeering, nor alleges that any such acts were continuous (*i.e.*, extended over a substantial time period). Indeed, at best, the Complaint alleges ***one*** specific communication by Jefferson which Horsman evidently contends is a predicate act of "extortion," ECF No. 1-3 at 40, ¶113. *See Costello v. Norton*, No. 96-cv-1634, 1998 U.S. Dist. LEXIS 16755, at *48 (N.D.N.Y. Oct. 21, 1998) (dismissing complaint asserting civil RICO claim that failed to establish at least two predicate acts). And, even if Horsman did allege other purported predicate acts of extortion (he did not), the Complaint makes no allegation whatsoever as to the timeframe in which the ostensible extortionate acts took place, leaving no possible way to determine that any purported racketeering acts extended over a sufficiently substantial period of time. *Id.* at *48 n.8. This failure to allege a "pattern" is likewise fatal to Horsman's RICO claim.

Considering all the well-pled factual allegations of the Complaint and reasonable inferences therefrom, even in a light most favorable to him, Horsman would not be entitled to relief under any interpretation of the facts. Accordingly, Horsman fails to state a RICO claim upon which relief can be granted, and that claim must be dismissed for each and all of the foregoing reasons. In addition, upon dismissal of this claim, Jefferson should be awarded his reasonable attorneys' fees, court costs, and costs of investigation pursuant to A.R.S. § 13-2314.04(N)-(Q).

### C.    <u>The Remaining Claims Against Jefferson Must Also Be Dismissed</u>

Absolute privilege/immunity acts as a total bar to liability in connection with actions and communications in the context of ***pending litigation/judicial proceedings***, *see Sobol v. Marsh*, 212 Ariz. 301, 130 P.3d 1000 (Ariz. Ct. App. 2006) (affirming dismissal of defamation claim based on litigation privilege); *Recorp Partners v. Gust Rosenfeld*, 198 Ariz. 230, 8 P.3d 418 (Ariz. Ct. App. 2000) (affirming, in part, dismissal of defamation claim based on litigation privilege); *Sierra Madre Dev. v. Via Entrada Townhouses Ass'n*, 20 Ariz. App. 550, 514 P.2d 503 (Ariz. Ct.

App. 1973) (affirming dismissal of defamation and abuse of process claims based on litigation privilege), ***as well as pre-litigation communication, investigation, and negotiation***, *see World Res. Co.*, 2012 Ariz. App. Unpub. LEXIS 1191, at *6-18 (affirming dismissal of defamation, wrongful interference, and aiding and abetting claims based on pre-litigation privilege).

As Arizona's Supreme Court has opined regarding litigation-related privilege/immunity:

> To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client. The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation.

*Green Acres Tr. v. London*, 141 Ariz. 609, 616, 688 P.2d 617, 624 (Ariz. 1984) (quoting *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. App. 1981)).[6] By way of example:

> The various applications of the absolute privilege to pre-proceeding communications include a demand letter sent to representative of plaintiff's insurer, a letter sent to potential defendant, a letter sent to investors which sought information relating to prospective proceeding, and a printed list of questions prepared in anticipation of proceeding.

*Id.* at 615-16 (citations omitted). In addition, "[t]he defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Id.* at 613; *see also Outley v. Moir*, No. 19-cv-0019, 2021 U.S. Dist. LEXIS 24368, at *30 (D. Ariz. Feb. 5, 2021). Finally, the privilege applies "to statements that relate to, bear on, or otherwise are connected to the proceeding." *Malkan v. Omni Hotels Mgmt. Corp.*, No. 20-cv-0060, 2021 U.S. Dist. LEXIS 4570, at *11 n.2 (D. Ariz. Jan. 11, 2021) (quoting *Collins v. Gallego*, No. 2 CA-CV 2019-0083, 2020 Ariz. App. Unpub. LEXIS 760, at *7-8 (Ariz. Ct. App. Jul. 8, 2020)).

The privileges often arise in the context of defamation, but "the litigation privilege doesn't

---

[6] This logic applies equally to investment professionals such as Jefferson, ECF No. 1-3 at 10, ¶24; *id.* at 27, ¶72, who owe fiduciary duties to act in the best interests of their entities and investors. *See, e.g.*, A.R.S. § 29-3409; *Sky Harbor Hotel Props., LLC v. Patel Props., LLC*, 246 Ariz. 531, 534, 443 P.3d 21, 24 (Ariz. 2019) ("a member owes common law fiduciary duties to the LLC if the member acts as an agent of the LLC"); *see also* ECF No. 1-3 at 33, ¶89 n.8.

just apply to defamation," and "regardless of the procedural posture of the case, *Drummond* [*v. Stahl*, 127 Ariz. 122, 618 P.2d 616 (Ariz. Ct. App. 1980)] highlights that the absolute litigation privilege is not restricted to defamation claims and applies more broadly to statements made in connection with judicial proceedings." *Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 Ariz. App. Unpub. LEXIS 1296, at *5, *6 n.1, *10 (Ariz. Ct. App. Nov. 26, 2019) (affirming dismissal of defamation, abuse of process, and aiding and abetting claims based on litigation privilege). Indeed, such privilege/immunity bars the remainder of Horsman's claims.

> [Plaintiff] nevertheless maintains that his negligence and IIED claims were improperly dismissed because the privilege applies only in defamation cases. But our holding in *Ledvina* [*v. Cerasani*, 213 Ariz. 569, 146 P.3d 70 (App. 2006)] was not so narrow. While the claim there sounded in defamation, [] we did not limit the privilege only to defamatory torts, and earlier cases have applied it more broadly, *see Linder v. Brown & Herrick*, 189 Ariz. 398, 404-06, 943 P.2d 758 (Ariz. Ct. App. 1997) (applying litigation privilege to fraud and IIED claims); *Drummond v. Stahl*, 127 Ariz. 122, 125, 618 P.2d 616 (Ariz. Ct. App. 1980) (applying absolute litigation privilege to a tortious interference with contract claim).

*Collins*, 2020 Ariz. App. Unpub. LEXIS 760, at *7-8; *see also Christakis v. Deitsch*, 478 P.3d 241, 244-46 (Ariz. Ct. App. 2020) (citing *Green Acres Tr.*, 141 Ariz. at 613, and *Yeung v. Maric*, 224 Ariz. 499, 502, 232 P.3d 1281 (Ariz. Ct. App. 2010)).

Here, Horsman has not alleged ***any*** conduct by Jefferson that could possibly fall outside the ambit of these privileges/immunities. Indeed, setting aside that the Complaint brazenly flouts rules against divulging unequivocally permissible settlement communications[7]—*see*, *e.g.*, ECF

---

[7] *See*, *e.g.*, *Suenos, Ltd. Liab. Co. v. Goldman*, No. 10-cv-1034, 2014 U.S. Dist. LEXIS 14124, at *16-18 (D. Ariz. Jan. 8, 2014) (issuing sanctions for referencing settlement communications in pleading, without advance court permission, emphasizing "[s]ettlement communications are, as a general rule, sacrosanct"), *report & rec. adopted*, 2014 U.S. Dist. LEXIS 14125 (D. Ariz. Feb. 5, 2014), *affirmed in part and reversed and remanded in part*, 633 F. App'x 874, 879 (9th Cir. 2015) ("a court may 'consider settlement negotiations ***for purposes of deciding a reasonable fee award***'"). Having been counsel of record in *Suenos*, Horsman's counsel is well-aware of the importance of not improperly putting settlement communications in pleadings (and that this case has nothing to do with a fee dispute). Indeed, these allegations should be stricken under Fed. R. Civ. P. 12(f) and Fed. R. Evid. 408. *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 284-89 (E.D. Pa. 2009); *Philadelphia's Church of Our Savior v. Concord Twp.*, No. 03-cv-1766, 2004 U.S. Dist. LEXIS 15400, at *8 (E.D. Pa. Jul. 27, 2004) (collecting cases).

No. 1-3 at 7, ¶¶15-16; *id.* at 8-9, ¶19; *id.* at 25-30, ¶¶68-79; *id.* at 31-33, ¶¶84-89; *id.* at 37, ¶98—the Complaint alleges no conduct whatsoever by Jefferson, either pre-filing or post-filing, that is (or could be) wholly unconnected to, and have no bearing on or relation to, the subject matter of the litigation. Since Jefferson was privileged to make all statements alleged in the Complaint, Horsman's claims against Jefferson for defamation, intentional infliction, invasion of privacy, and IIED must be dismissed. *See Christakis*, 478 P.3d at 244-45; *Taraska*, 2019 Ariz. App. Unpub. LEXIS 1296, at *4-9; *World Res. Co.*, 2012 Ariz. App. Unpub. LEXIS 1191, at *6-23.

Moreover, even if such privileges/immunities were not applicable to bar these claims (they are), the Complaint plainly fails to allege facts sufficient to state causes of action. For example, as to defamation and invasion of privacy,[8] Horsman fails to allege ***any*** non-privileged statement by Jefferson (or when or to whom such statement was made) which is purportedly false. Does Horsman mean the allegations in the BRJ Complaint? Setting aside that Jefferson is not a party in that complaint,[9] Horsman conclusorily recites that "[a]ll of the material allegations in the [] BRJ Complaint are false," ECF No. 1-3 at 34, ¶90, and that "the [] BRJ Complaint is rife with false, tabloid style accusations against Horsman and his business partners and businesses," ECF No. 1-3 at 8, ¶22. But which allegations are ostensibly false, and why? Taken to its logical extreme, this includes allegations such as that Horsman is a principal of Integrated CBD—a fact Horsman alleges in his own Complaint, ECF No. 1-3 at 9, ¶22. The barebones recitation that Jefferson made "false and defamatory statements about Plaintiff," ECF No. 1-3 at 44, ¶138, is woefully insufficient to place Jefferson on notice of the claims against him. Indeed, Jefferson, and this Court, are left to guess what he allegedly said about Horsman that is claimed to be actually false, and why. Thus, Horsman's defamation and invasion of privacy claims must be dismissed. *See*, *e.g.*, *Earle v. Sedona Fin. Ctr., Ltd. Liab. Co.*, No. 1 CA-CV 16-0079, 2017 Ariz. App. Unpub. LEXIS 1332, at *5 (Ariz. Ct. App. Sep. 19, 2017); *Pfaendler v. Town of Sahuarita*, No. 20-cv-

[8] In Arizona, defamation and false light invasion of privacy require falsity as an element. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 579, 343 P.3d 438, 449 (Ariz. Ct. App. 2015).
[9] *See* ECF No. 1-3 at 44, ¶138 ("Jefferson was not a party to the [] BRJ Complaint"); *see also id.* at 8, ¶17; *id.* at 34, ¶90; *id.* at 43, ¶131.

0188, 2020 U.S. Dist. LEXIS 239678, at *22-25 (D. Ariz. Dec. 17, 2020).

Similarly, as to intentional interference, Horsman makes no allegation whatsoever as to what Jefferson purportedly did (*i.e.*, who he contacted, or what he said or did) to interfere with any of Horsman's supposed business expectancies, nor does he allege which such expectancies he actually lost or the purported reasons why. As a result, Horsman's intentional interference claim must be dismissed for failure to state a claim. *See Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10-15, 106 P.3d 1020, 1025-29 (Ariz. 2005). And as to the intentional infliction claim, Horsman clearly fails to plead any conduct or statement by Jefferson that could possibly rise to the level of "'extreme' and 'outrageous'"—especially considering all Jefferson's alleged statements are unequivocally privileged—which is a necessary element of such a claim. *See Johnson v. McDonald*, 197 Ariz. 155, 160 (Ariz. Ct. App. 1999) (citing *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (Ariz. 1987)). Thus, this claim must likewise be dismissed. *See id.* at 160-61 (affirming dismissal of IIED claim on the grounds that the allegations did not constitute outrageous and extreme conduct); *Pfaendler*, 2020 U.S. Dist. LEXIS 239678, at *25-26.

As to the civil conspiracy claim, "[a] civil conspiracy requires an underlying tort which the alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr., Inc.*, 197 Ariz. 535, 545, 5 P.3d 249, 259 (Ariz. Ct. App. 2000). Because the underlying claims against Jefferson must be dismissed, Horsman's conspiracy claim fails too. *See Maloney v. Kropp*, No. 12-cv-2054, 2013 U.S. Dist. LEXIS 18102, at *3 (D. Ariz. Feb. 8, 2013) ("Having dismissed Plaintiff's other two claims above, the Court finds no underlying tort upon which Plaintiff might base his claim for civil conspiracy. Accordingly, the Court will dismiss the claim.").

## IV.    CONCLUSION

WHEREFORE, the Complaint must be dismissed in-full as to all counts against Defendant Jefferson, for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and furthermore, Jefferson should be awarded his reasonable attorneys' fees, court costs, costs of investigation, and all other appropriate relief in connection with this proceeding under A.R.S. § 13-2314.04(N)-(Q) and A.R.S. § 12-349.

**RESPECTFULLY SUBMITTED** on June 17, 2021.

**ANDREWS LAW FIRM**

*/s/ David A. Weisz*
David A. Weisz, Esq.
Ryan J. Andrews, Esq.
Steven R. Andrews, Esq.
822 North Monroe Street
Tallahassee, Florida 32303
david@andrewslaw.com
ryan@andrewlaw.com
steve@andrewslaw.com
*Pro Hac Vice Attorneys for*
*Defendant Brett R. Jefferson*


**WILENCHIK & BARTNESS, P.C.**

John "Jack" D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendant Brett R. Jefferson*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2021, I electronically transmitted the foregoing document to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter.


 */s/ David A. Weisz*